## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **LAUREL KIRTZ,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 12-10690-DJC** |
| ) | |
| **WELLS FARGO BANK N.A.,** ) | |
| **FANNIE MAE a/k/a FEDERAL NATIONAL** ) | |
| **MORTGAGE ASSOCIATION,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                November 29, 2012

### I.       Introduction

Laurel Kirtz ("Kirtz") has brought suit against Wells Fargo Bank, N.A. ("Wells Fargo")

and Federal National Mortgage Association ("Fannie Mae") asserting claims that arise out of the

denial of her loan modification application under the Home Affordable Modification Program

("HAMP") and the subsequent foreclosure on her residence in November 2011 by Wells Fargo.

Wells Fargo has now moved to dismiss Kirtz's twelve claims.  Kirtz has withdrawn her unjust

enrichment, negligence per se and intentional infliction of emotional distress claims in her

opposition to Wells Fargo's motion to dismiss and, therefore, the motion to dismiss as to those

claims is moot.   As to the remainder of the claims, Wells Fargo's motion to dismiss is

GRANTED in part and DENIED in part.

### II.      Factual Allegations

Unless otherwise noted, the following facts are as alleged in Kirtz's complaint.

1

On September 26, 2005, Kirtz purchased her home located at 92 Moreland Street in Boston, Massachusetts (the "Property") for approximately $680,000 from Andrea Hagins and May Evelyn Diggs.  Compl. ¶ 6.  The deed conveying the property to Kirtz was signed by Andrea Hagins and Andrea Hagins as power of attorney for May Evelyn Diggs, however, no power of attorney was recorded in the Suffolk County Registry of Deeds and no power of attorney existed.  Id. ¶¶ 7–9.

Kirtz financed the purchase of the Property with a loan of $544,000 from SLM Financial Corporation.  Id. ¶ 6.  In October 2005, SLM Financial Corporation transferred its interest in the Property to the Mortgage Electronic Registration System ("MERS").  Id. ¶ 11.  In April 2006, Kirtz took out a second loan to finance the cost of repairs of the rental units within the Property. Id. ¶ 14.  In October 2006, Kirtz refinanced her loan with Ohio Savings Bank for $600,000, which discharged the original two mortgages on the Property.  Id. ¶¶ 15–16.  Wells Fargo became the servicer of the loan in July 2007.  Id. ¶ 21.

In May 2010, Kirtz was delinquent with her mortgage payment and in June 2010, Wells Fargo sent Kirtz a letter introducing her to the Home Affordable Modification Program ("HAMP") and Kirtz indicated her desire to participate in the program.  Id. ¶¶ 24, 26–27.  In September 2010, Kirtz submitted her HAMP application.  Id. ¶ 28.  In October 2010, Kirtz began to miss mortgage payments again.  Id. ¶ 29.  On October 15, 2010, Kirtz contacted Wells Fargo to inquire about a loan modification and Wells Fargo told her that she needed to submit certain documents, including a hardship letter, to Wells Fargo's hardship department.  Id. ¶¶ 32–33. After an initial interview, Wells Fargo encouraged Kirtz to increase her income and submit the documents.  Id. ¶¶ 35–36.  Sometime after submitting all of the required documents, Wells Fargo

switched Kirtz's primary point of contact.  Id. ¶ 41.  The new contact person insisted that Wells

Fargo did not have any of Kirtz's files in the system and required Kirtz to resubmit financial

information.  Id. ¶ 42.  After a review of the file, the contact person informed Kirtz that she

lacked sufficient income to receive a mortgage modification.  Id. ¶ 43.  In December 2010, after

Kirtz was denied a loan modification, she contacted "Urban Edge," a non-profit organization that

specialized in assisting distressed homeowners, for help in her mortgage modification process.

Id.  ¶ 45.  Urban Edge resubmitted Kirtz's loan modification documents.  Id. ¶ 46.  In March

2011, Wells Fargo told Kirtz that a mortgage modification was "almost going to happen," but

there were title issues with the Property that were causing delays to her loan modification

application.  Id. ¶ 52.  In early April 2011, Wells Fargo informed Kirtz that her 2009 taxes had

never been filed.  Id. ¶ 53.  Kirtz discovered that her taxes had not been filed due to an oversight

by her tax preparer and "promptly addressed the issue."  Id. ¶ 54.  Kirtz corresponded with Wells

Fargo regarding her taxes over twenty times between April 26, 2011 and May 9, 2011.  Id. ¶ 55.

On May 6, 2011, Wells Fargo closed Kirtz's loan modification file and required her to resubmit a

loan modification application.  Id. ¶ 56.

Kirtz submitted an additional loan modification application and required documentation

both by herself and through Urban Edge.  Id. ¶ 57.  On or about June 27, 2011, Wells Fargo

denied Kirtz's loan modification application because she had not provided the requested

documents.  Id. ¶ 61.  Kirtz resubmitted her HAMP application and complete financial

documents on July 12, 2011.  Id. ¶ 62.  Despite Kirtz's numerous attempts to contact her primary

point of contact at Wells Fargo at this time, he "remained elusive."  Id. ¶ 64.  Kirtz found out that

the primary point of contact closed her filed because he claimed that he was unable to reach her.

Id.  However, at all relevant times, Kirtz has maintained a cell phone and diligently checked her messages.  Id. ¶ 65.

From October 2010 through October 2011, Kirtz was assigned seven different loss mitigation specialists as her primary point of contact at Wells Fargo.  Id. ¶ 47.  The loss mitigation specialist would often switch when Kirtz's HAMP application required a few clarifications.  Id. ¶ 51.  Kirtz was often unable to contact her assigned point of contact by phone for weeks at a time.  Id. ¶ 50.  Whenever a new contact person was assigned to Kirtz, that person would not have access to anything she previously submitted requiring Kirtz to restart the process.  Id. ¶ 48.  During this process, Kirtz forwent other legal avenues available to her including sale or short sale of the Property, bankruptcy or alternative financing.  Id. ¶ 59.

On October 22, 2010, MERS assigned the mortgage in the Property to Wells Fargo.  Id. ¶¶ 30–31; Ex. B to Def. Mem. (the "Assignment of Mortgage"), D. 11-2.  The Assignment was recorded at the Suffolk County Registry of Deeds.  Id.  Wells Fargo held a foreclosure auction on the Property on November 14, 2011.  Compl. ¶¶ 1, 153–155; Ex. C to Def. Mem. (the "Foreclosure Deed"), D. 11-3.  Wells Fargo had the highest bid at the auction and assigned the bid to Fannie Mae.  Foreclosure Deed, D. 11-3 at 4–5.

## III.   Procedural History

On March 23, 2012, Kirtz filed the instant complaint asserting claims for breach of contract (Count I), fraud (Count II), negligent misrepresentation (Count III), negligence (Count IV), estoppel or detrimental reliance (Count V), unjust enrichment (Count VI), negligence per se (Count VII), intentional infliction of emotional distress (Count VIII), quiet title (Count IX), violation of Mass. Gen. L. c. 93A (Count X), violation of the covenant of good faith and fair

dealing (Count XI) and wrongful foreclosure (Count XII) against Wells Fargo.  D. 9.  Kirtz also

asserted the claim of quiet title against Fannie Mae.  Id.  Wells Fargo and Fannie Mae removed

the action to this court on April 19, 2012.  D. 1.  On May 7, 2012, Fannie Mae moved to dismiss

the single claim against it pursuant to Fed. R. Civ. P. 12(b)(6).  D. 7.  On May 10, 2012, Wells

Fargo moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).  D. 10.  Kirtz

withdrew the claims of unjust enrichment, negligence per se and intentional infliction of

emotional distress in her opposition to Wells Fargo's motion to dismiss.  Pl. Opp., D. 16.  At a

hearing on the motions on November 7, 2012, the court granted Fannie Mae's motion to dismiss

and took Wells Fargo's motion to dismiss under advisement.  D. 22.

## IV.  Discussion

### A.  Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted

pursuant to Fed. R. Civ. P. 12(b)(6), the Court "must assume the truth of all well-plead facts and

give the plaintiff the benefit of all reasonable inferences therefrom."  Ruiz v. Bally Total Fitness

Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007).  The Court will dismiss a claim that fails to plead

"enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly,

550 U.S. 544, 570 (2007).  To state a plausible claim, a complaint need not contain detailed

factual allegations, but it must recite facts sufficient to at least "raise a right to relief above the

speculative level . . . on the assumption that all the allegations in the complaint are true (even if

doubtful in fact)."  Id. at 555; see San Geronimo Caribe Project, Inc. v. Acevedo-Vila, 687 F.3d

465, 471 (1st Cir. 2012).  "A pleading that offers 'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action will not do.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009) (quoting <u>Twombly</u>, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557) (alteration in original).  Dismissal for failure to state a claim is appropriate if the pleadings fail to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  <u>Berner v. Delahanty</u>, 129 F.3d 20, 25 (1st Cir. 1997) (quoting <u>Gooley v. Mobil Oil Corp.</u>, 851 F.2d 513, 515 (1st Cir. 1988)) (internal quotation marks omitted).  At bottom, a complaint must contain sufficient factual matter that, accepted as true, would allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 556 U.S. at 678.

### B. Breach of Contract (Count I) and Violation of the Covenant of Good Faith And Fair Dealing (Count XI)

Kirtz asserts two causes of action against Wells Fargo premised upon its alleged failure to fulfill its obligations under HAMP.  In Count I, Kirtz claims that she is a third-party beneficiary under HAMP and alleges a breach of contract claim on the basis that Wells Fargo did not fulfill its obligations under HAMP and failed to modify her loan.  Compl. ¶¶ 71, 83–84.  In Count XI, Kirtz alleges that Wells Fargo breached the covenant of good faith and fair dealing under the Servicer Participation Agreements ("SPAs") under HAMP.  <u>Id.</u> ¶¶ 150–151.

#### 1. Breach of Contract

"As a majority of federal courts have determined, there is no private right of action under HAMP."  <u>McBride v. Am. Home Mortg. Servicing Inc.</u>, No. 11-10998-RWZ, 2012 WL 931247, at *3 (D. Mass. Mar. 19, 2012); <u>see</u> <u>Okoye v. Bank of N. Y. Mellon</u>, No. 10-11563-DPW, 2011 WL 3269686, at *7 n.10 (D. Mass. July 28, 2011) (collecting cases).  Furthermore, "[t]he prevailing view in this district and others is that defaulted mortgagors are not entitled to sue for

HAMP violations as third-party beneficiaries under an agreement between the bank and the government absent a clear indication in the contract to the contrary." Seidel v. Wells Fargo Bank, No. 12-10766-RWZ, 2012 WL 2571200, at *3 (D. Mass. July 3, 2012). Therefore, there is no viable contract-based HAMP claim and Count I is dismissed.

2.    *Violation of the Covenant of Good Faith and Fair Dealing*

Every contract contains an implied covenant of good faith and fair dealing. Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471 (1991). However, the covenant only "governs conduct of parties after they have entered into a contract; without a contract, there is no covenant to be breached." Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 230 (1st Cir. 2005). Because Kirtz is neither a party to the SPAs executed by Wells Fargo under HAMP nor a third-party beneficiary of same, there can be no breach of the implied covenant of good faith and fair dealing. See Seidel, 2012 WL 2571200, at *3. Accordingly, Count XI is also dismissed.

**C.    Negligence (Count IV)**

Kirtz has asserted a claim of negligence against Wells Fargo on the basis of Wells Fargo's allegedly improper handling of her loan modification applications under HAMP. Compl. ¶¶ 111–116. Kirtz alleges that Wells Fargo had a "duty to [her] to provide at least a minimum level of care to her modification documents, personal information, and NPV test factors." Id. ¶ 114. Kirtz further alleges that Wells Fargo "negligently misplaced, lost, or destroyed documents given to them over the course of the loan modification process," "negligently miscalculated the Plaintiff's NPV test" and "negligently represented that the Plaintiff's income could be enough for a loan modification." Id. ¶¶ 111–113.

Under Massachusetts law, the plaintiff must show four elements to sustain a claim for negligence:  (1) a legal duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) proximate or legal cause; and (4) actual damage or injury.  Jorgensen v. Mass. Port Auth., 905 F.2d 515, 522 (1st Cir. 1990).  "HAMP . . . does not create an independent duty for mortgagors where no other basis for that duty exists."  Seidel, 2012 WL 2571200, at *4.  In an attempt to create another basis for a duty, Kirtz argues that the "Good Samaritan" doctrine applies because Wells Fargo contacted her regarding a loan modification under HAMP after she was late on a mortgage payment and Kirtz relied on her "would-be rescuer."  Pl. Opp., D. 16 at 8.  In support of this argument, Kirtz relies upon the principle articulated in Davis v. Westwood Group, 420 Mass. 739 (1995):  "[i]f a person voluntarily assumes a duty or undertakes to render services to another that should have been seen as necessary for her protection, that person may be liable for harm caused because of the negligent performance of his undertaking."  Id. at 746 (quoting Thorson v. Mandell, 402 Mass. 744, 748 (1988)) (internal quotation marks omitted).  However, the Supreme Judicial Court in Davis explained that it was recognizing the Good Samaritan principles articulated in the Restatement (Second) of Torts § 323 (1965), which applies to liability only for physical harm.  Davis, 420 Mass. at 747 n.12.  The Good Samaritan rule is inapplicable to the facts in this case because Kirtz has not alleged any physical harm at the hands of Wells Fargo.  See Fieldwork Bos., Inc. v. United States, 344 F. Supp. 2d 257, 264 (D. Mass. 2004) (holding that the Good Samaritan rule incorporated in the Restatement (Second) of Torts did not apply because there was no physical injury at issue).  Because Kirtz cannot establish the duty element of a negligence claim, Kirtz's negligence claim must fail and the Court dismisses Count IV.

### D.     <u>Fraud (Count II)</u>

In Count II, Kirtz asserts a claim of fraud.  Compl. ¶¶ 86–96.  To plead a claim for fraud under Massachusetts law, a plaintiff must plead that "the defendant made a false representation of material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage."  <u>Taylor v. Am. Chemistry Council</u>, 576 F.3d 16, 31 (1st Cir. 2009) (quoting <u>Russell v. Cooley Dickinson Hosp., Inc.</u>, 437 Mass. 443, 458 (2002)) (internal quotation marks omitted).  Fed. R. Civ. P. 9(b) requires that the plaintiff plead fraud with particularity.  <u>See</u> <u>Hayduk v. Lanna</u>, 775 F.2d 441, 444 (1st Cir. 1985) (noting that "mere allegations of fraud . . . averments to conditions of mind, or referrals to plans and schemes are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated").  A complaint claiming fraud must detail the who, what, where and when of the alleged fraudulent statement.  <u>Doyle v. Hasbro, Inc.</u>, 103 F.3d 186, 194 (1st Cir. 1996); <u>Varney v. R.J. Reynolds Tobacco Co.</u>, 118 F. Supp. 2d 63, 68 (D. Mass. 2000).

As to this claim, Kirtz alleges that "on or about October 15, 2010" Wells Fargo represented (1) "that Wells Fargo was working to provide her with a loan modification"; (2) "that she need not worry about making house payments while the loan modification was being processed"; (3) "that her house was not being foreclosed upon while the loan modification was being processed"; and (4) "that [her income] was in line to achieve a modification if she could increase it a little."  Compl. ¶ 87.  While these allegations satisfy the "when" and "what" requirements of Rule 9(b), they fail to specify who at Wells Fargo made the representations.  An allegation that an unnamed employee of the defendant made a particular statement simply

describes a statement "made by an unidentified person at an unnamed place and at an unspecified time" is thus "patently inadequate under Rule 9(b)." Rodi, 389 F.3d at 15; see Pearce v. Duchesneau Grp., Inc., 392 F. Supp. 2d 63, 75 (D. Mass. 2005) (citing Rodi to hold that an allegation that "defendants" made certain statements failed to comply with Rule 9(b)).

Moreover, "Rule 9(b) requires not only specifying the false statements and by whom they were made but also identifying the basis for inferring scienter." N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 13 (1st Cir. 2009). "The courts have uniformly held inadequate a complaint's general averment of the defendant's 'knowledge' of material falsity, unless the complaint also sets forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." Id. (quoting Greenstone v. Cambex Corp., 975 F.2d 22, 25 (1st Cir.1992)). Kirtz alleges that the "Defendants' representations were false" and that they were "knowing, reckless, and/or intentional." Compl. ¶¶ 88, 90. Kirtz has failed to plead facts to suggest that the misrepresentations were knowingly false when made in October 2010. See L'Esperance v. HSBC Consumer Lending, Inc., No. 11-CV-555-LM, 2012 WL 345892, at *8 (D.N.H. Feb. 1, 2012) (applying Cardinale to hold that to the extent that the claims required a showing of scienter, the plaintiff's allegation that the "Defendants knew or should have known that such representations were false" was insufficient under Rule 9(b)). Rather, the facts as alleged give rise to the inference that these representations were true: Kirtz alleges that after the statements were made in October 2010, her primary point of contact reviewed her file and told her that she lacked sufficient income to receive a mortgage modification. Compl. ¶ 43. Wells Fargo did not

foreclose between October 2010 and the time that they first informed her that she lacked sufficient income for a mortgage modification.  See Foreclosure Deed, D. 11-3.[1]

Kirtz also alleges that these same misrepresentations were made on "multiple other occasions."  Compl. ¶ 87.  That additional allegation also fails Rule 9(b)'s "when" requirement. See Rodi, 389 F.3d at 15.

Kirtz argues that she cannot plead the particulars of the fraud because the facts are in the sole knowledge of the defendant.  Pl. Opp., D. 16 at 13.  However, Rule 9(b)'s "requirement of pleading supporting facts applies 'even when the fraud relates to matters peculiarly within the knowledge of the opposing party.'"  New Eng. Data Servs., Inc. v. Becher, 829 F.2d 286, 288 (1st Cir. 1987) (quoting Wayne Inv., Inc. v. Gulf Oil Corp., 739 F.2d 11, 14 (1st Cir. 1984)). Furthermore, the "who," "what," "where" and "when" of the fraudulent statements are facts within Kirtz's control as she alleges that the representations were made in the course of communications with her.  Accordingly, Count II of the complaint is dismissed.

### E.   Negligent Misrepresentation (Count III)

To assert a claim for negligent misrepresentation in Massachusetts, as Kirtz does in Count III, a plaintiff must allege that the defendant:

> (1) in the course of his business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance on the information, and that he (6) failed to exercise reasonable care or competence in obtaining or communicating the information.

---

[1] The Court may consider the Foreclosure Deed and the Assignment of Mortgage discussed infra without converting the motion to dismiss into a motion for summary judgment because it is a public record.  See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (noting that although a court resolving a motion to dismiss brought under Rule 12(b)(6) is ordinarily prohibited from looking beyond the four corners of a complaint without converting the motion to dismiss into a Rule 56 motion for summary judgment, courts have recognized "exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint").

Braunstein v. McCabe, 571 F.3d 108, 126 (1st Cir. 2009) (quoting Gossels v. Fleet Nat'l Bank, 453 Mass. 366, 902 (2009)) (internal quotation marks omitted).   A claim of negligent misrepresentation does not require the plaintiff to plead the defendant's knowledge of the statement's falsity.   Epstein v. C.R. Bard, Inc., No. 03-12297-RWZ, 2004 WL 1598912, at *3 (D. Mass. July 19, 2004), aff'd, 460 F.3d 183 (1st Cir. 2006).

Most of the allegations in Kirtz's negligent misrepresentation claim are identical to those in her "fraud" claim.   Compl. ¶ 99.   As a result, these allegations are also subject to Rule 9(b).   See Cardinale, 567 F.3d at 15 (although negligent misrepresentation claims are "not on their face subject to Rule 9(b)," the rule applies to "associated claims where the core allegations effectively charge fraud"); Sebago, Inc. v. Beazer East, Inc., 18 F. Supp. 2d 70, 95 (D. Mass. 1998) (requiring a negligent misrepresentation claim to comply with Rule 9(b)).   Thus, these allegations are deficient because they do not identify "who," "what," "where" and "when" as required by Rule 9(b).   See Compl. ¶ 99.

The only allegation in the negligent misrepresentation claim that does not overlap with the fraud claim is the allegation that "Defendant represented to [p]laintiff on multiple occasions that the plaintiff's loss mitigation file was complete and needed no additional documents before offering a mortgage modification."   Id. ¶ 101.   This allegation states a plausible claim of negligent misrepresentation.   Kirtz elsewhere alleges that she was repeatedly required to resubmit the same paperwork, id. ¶ 48, which gives rise to the reasonable inference that her file did not in fact need "no additional documents" before she could be offered a mortgage modification.   Absent this misrepresentation, Kirtz would have provided the materials needed to make her file complete or pursued other options.   Id. ¶ 121.   Kirtz alleges that this cycle delayed

the modification process, resulting in increased interest, penalties and late fees and ultimately the loss of her home.  See id. ¶ 109.  Accordingly, she has stated a claim for negligent misrepresentation.  Cf. First Mass. Bank, N.A. v. Florian, 63 Mass. App. Ct. 1110 (2005) (holding that defendants could be liable for negligent misrepresentation if they falsely stated that no further approvals were required for contemplated transactions).

### F.      Estoppel/Detrimental Reliance (Count V)

Kirtz asserts a claim for estoppel or detrimental reliance.  Compl. ¶¶ 117–123.  Under Massachusetts law, "an estoppel claim must assert that (1) a party made 'a representation intended to induce reliance on the part of a person to whom the representation is made;' (2) a person acts 'in reasonable reliance on the representation;' and (3) the party suffers a 'detriment as a consequence of the act.'"  Thrivent Fin. for Lutherans v. Strojny, No. 11-11011-JLT, 2012 WL 3218526, at *5 (D. Mass. Aug. 9, 2012) (quoting Bongaards v. Millen, 440 Mass. 10, 15 (2003)).  "An estoppel claim . . . requires both a statement intended to induce reliance by the defendant, and detrimental reliance by the plaintiff."  Id.  The promise on which a claim for estoppel is based must demonstrate "an intention to act or refrain from acting in a specified way, so as to justify a promise in understanding that a commitment has been made."  R. I. Hosp. Trust Nat'l Bank v. Varadian, 419 Mass. 841, 849–50 (1995) (quoting Restatement (Second) of Contracts § 2 (1981) (emphasis added)).  The "putative promise . . . must be sufficiently 'definite and certain in its terms' to be enforceable."  Dixon v. Wells Fargo Bank, N.A., 798 F. Supp. 2d 336, 341 (D. Mass. 2011) (quoting Moore v. La-Z-Boy, Inc., 639 F. Supp. 2d 136, 142 (D. Mass. 2009)).

Kirtz alleges that Wells Fargo promised her that it would modify her loan, provided that she "submit[] documents and work diligently to increase her income" and that "her home was not being referred for foreclosure."  Compl. ¶¶ 118–119.  This is not simply an open-ended agreement to agree, see Dixon, 798 F. Supp. 2d at 342 (noting that "[a]n agreement to reach an agreement is a contradiction in terms and imposes no obligations on the parties thereto" (alteration in original) (quoting Rosenfield v. U.S. Trust Co., 290 Mass. 210, 217 (1935))), but an agreement not to take certain action while the negotiations are occurring.  Therefore, the court concludes, at least as alleged by Kirtz, this is a sufficiently definite promise to state a plausible claim.  See id. (explaining that "[i]t is the view of this Court that '[f]oreclosure is a powerful act with significant consequences,' and where a bank has obtained the opportunity to foreclose by representing an intention to do the exact opposite—i.e., to negotiate a loan modification that would give the homeowner the right to stay in his or her home—the doctrine of promissory estoppel is properly invoked under Massachusetts law to provide at least reliance-based recovery" (second alteration in original) (quoting U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637, 655 (2011) (Cordy, J., concurring))).

Kirtz alleges that in reliance on Wells Fargo's promises, she did not take other actions that would have allowed her to keep her home or realize some equity in her home, such as a sale, short sale, bankruptcy or refinancing.  Compl. ¶ 121.  As a basis for dismissal, Wells Fargo argues that Kirtz "cannot demonstrate the requisite detrimental reliance" because Kirtz fails to allege any conduct on Wells Fargo's part that prevented her from pursuing other workout options after her loan modification file was closed and just prior to the foreclosure.  Def. Mem., D. 11 at 14–15.  That the same options she did not pursue over a one-year period while Wells Fargo was

allegedly promising her that they would consider modifying her loan and not foreclose may have still have been available after Wells Fargo broke the alleged promises does not make it implausible that Kirtz suffered a detriment by not taking advantage of such options over the year preceding the foreclosure.  Moreover, "[i]n order to succeed on an estoppel theory, it must be shown that one has been induced by the conduct of another to do something different from what otherwise would have been done and that harm has resulted."  Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 468 (1995).  Kirtz has alleged other avenues she could have taken to prevent the foreclosure, but did not upon reliance on Wells Fargo's promises, and therefore, there are enough facts alleged to give rise to the reasonable inference that Kirtz relied to her detriment.  Accordingly, Wells Fargo's motion to dismiss Count V will be denied.

### G.    Quiet Title under Mass. Gen. L. c. 240 § 6 (Count IX)

Kirtz asserts a quiet title claim under Mass. Gen. L. c. 240, § 6 against Wells Fargo on the basis that the foreclosure sale is void.  Compl. ¶ 145.  This claim arises under Mass. Gen. L. c. 240, § 6, which authorizes actions "to quiet or establish the title to land situated in the commonwealth or to remove a cloud from the title thereto."  However, under Massachusetts law, a plaintiff cannot maintain a quiet title action unless she has both actual possession of and legal title to the property.  Bevilacqua v. Rodriguez, 460 Mass. 762, 767 n.5 (2011) (citing Daley v. Daley, 300 Mass. 17, 21 (1938)).  Massachusetts is a "title theory state" and therefore, "when a person borrows money to purchase a home and gives the lender a mortgage, the homeowner-mortgagor retains only equitable title in the home; the legal title is held by the mortgagee."  Ibanez, 458 Mass. at 649.  Mere equitable title is insufficient to succeed on a quiet title claim.  See Marley v. Bank of Am., No. 10-10885-GAO, 2012 WL 847374, at *5 (D. Mass. Mar. 13,

2012).  A mortgagor who has not repaid her loan in full does not hold legal title to the property, and thus cannot maintain a quiet title action.  See, e.g., Ayer v. U.S. Bank, No. 12-10981-NMG, 2012 WL 5361480, at *2 (D. Mass. Oct. 30, 2012) (holding that plaintiffs failed to state a claim for quiet title because they were mortgagors who had not repaid their loan in full, and thus did not hold legal title); Oum v. Wells Fargo, N.A., 842 F. Supp. 2d 407, 412 (D. Mass. 2012) (holding that "a quiet title action is not an avenue open to a mortgagor whose debt is in arrears because, until the mortgage is discharged, the title necessarily remains under a cloud"). Accordingly, Count IX is dismissed.

### H.     Wrongful Foreclosure (Count XII)

Kirtz asserts a claim of wrongful foreclosure on the grounds that Wells Fargo (1) violated HAMP and improperly denied her loan modification request; (2) did not properly notice the foreclosure prior to the sale; (3) did not hold the assignment of the mortgage at the time of the mortgage; and (4) did not have the original promissory note at the time of the foreclosure. Compl. ¶¶ 153–159.

#### 1.     HAMP Violations

As previously discussed, HAMP does not provide a private right of action and therefore Wells Fargo's alleged HAMP violations cannot serve as the basis of a wrongful foreclosure claim.  See Lacey v. BAC Home Loans Servicing, LP (In re Lacey), 480 B.R. 13, 40–41 (Bankr. D. Mass. 2012) (recommending that defendants were entitled to summary judgment on the wrongful foreclosure claim to the extent that the debtor sought to avoid the foreclosure sale solely on the grounds of a HAMP violation).

2.     *Notice*

Kirtz pleads in a conclusory fashion that Wells Fargo "did not properly notice the foreclosure sale."  Compl. ¶ 153.  Kirtz fails to specify in the complaint which notice provision of the Massachusetts foreclosure laws Wells Fargo allegedly violated or the factual basis for such violation.  Kirtz suggests in her opposition that she is alleging that Wells Fargo failed to provide notice pursuant to Mass. Gen. L. c. 244, § 14, which requires that notice of a foreclosure sale be sent via registered mail to the owner or owners of record of the equity of redemption of the property and published in a town newspaper where the mortgaged property lies prior to the date of sale.  Pl. Opp., D. 16 at 10.  Kirtz argues in her opposition that the property was not properly conveyed to her at the time of the sale because the deed conveying Kirtz the property was signed by Andrea Hagins and Andrea Hagins "UPA" for May Evelyn Diggs, although no power-of-attorney existed.  Pl. Opp., D. 16 at 10.  Therefore, Kirtz argues that no notice was properly given to May Evelyn Diggs at least fourteen days prior to the foreclosure sale pursuant to Mass. Gen. L. c. 244, § 14.  Id. at 11.

Mass. Gen. L. c. 244, § 14 requires that notice be sent to the owner of record of the equity of redemption.  Whether notice was properly given to Diggs is irrelevant because she was not the owner of record of the equity of redemption.  As previously discussed, when a mortgage to real property is given, "[t]he mortgage splits the title in two parts:  the legal title, which becomes the mortgagee's, and the equitable title, which the mortgagor retains."  Maglione v. BancBoston Mortg. Corp., 29 Mass. App. Ct. 88, 90 (1990).  This equitable interest is labeled the equity of redemption.  Id.; see also, United States v. Gargill, 218 F.2d 556, 560 (1st Cir. 1955) (noting that under Massachusetts law, a landowner granting a mortgage "does not make an absolute and

unequivocal conveyance of his property but retains an equity of redemption"). Therefore, the mortgagor is the owner of the equity of redemption. There are no allegations that Diggs is the mortgagor of the Property. Rather, Kirtz alleges that she purchased the home from Andrea Haggins and Diggs and financed the purchase with a loan, which she later refinanced, and which serves as the basis for her complaint. Compl. ¶¶ 6, 15. Accordingly, Kirtz, as the mortgagor of the property, retained an equity of redemption.

The complaint does not contain any factual allegations that notice of the foreclosure sale was not sent to Kirtz or published in a town newspaper pursuant to Mass. Gen. L. c. 244, § 14 and Kirtz does not argue in her opposition that such was the case. Thus, Kirtz's allegations that Wells Fargo failed to comply with the notice requirement does not state a plausible claim under Mass. Gen. L. c. 244, § 14.

### 3. Assignment

Kirtz challenges the foreclosure by alleging that Wells Fargo did not hold the assignment of the mortgage at the time of the sale because the "signature on the [assignment] instrument is fraudulent." Compl. ¶¶ 30, 154. In Massachusetts, a mortgage holder may foreclose on the property by exercise of the statutory power of sale if such power is granted to it under the mortgage. Ibanez, 458 Mass. at 646. If the mortgage holder does so, the power of sale may be assigned to an assignee, and the assignee may exercise the power of sale as long as it was assigned the mortgage at the time of the notice of sale and foreclosure sale. Id. at 648. Where the assignee is the foreclosing entity, it must show that the "assignment was made by the party that itself held the mortgage." Id. at 651. "Any effort to foreclose by a party lacking 'jurisdiction and authority' to carry out a foreclosure . . . is void." Id. at 647. Consequently,

district courts have held that "a mortgagor may bring a wrongful foreclosure action to set aside a foreclosure conducted by an entity that was never validly assigned the mortgage."  Butler v. Deutsche Bank Trust Co. Americas, No. 12-10337-DPW, 2012 WL 3518560, at *6 (D. Mass. Aug. 14, 2012); see also Rosa v. Mortg. Elect. Sys., Inc., 821 F. Supp. 2d 423, 429 n.5 (D. Mass. 2011) (noting that "[p]laintiffs appear to have standing under [Ibanez], because the allegations [regarding the validity of the assignment], if proven, would render the foreclosure sale void, under Massachusetts law").[2]  Kirtz has failed to plead sufficient facts to challenge the validity of the mortgage assignment.

A mortgage assignment is valid as long as it complies with the requirements of Mass. Gen. Laws. c. 183, § 54B.  Rosa, 821 F. Supp. 2d at 430; Peterson v. GMAC Mortg., LLC, No. 11-11115-RWZ, 2011 WL 5075613, at *4 (D. Mass. Oct. 25, 2011).  The Massachusetts statute regarding mortgage assignments provides:

> [n]otwithstanding any law to the contrary . . . [an] assignment of mortgage . . . if executed before a notary public . . . by a person purporting to hold the position of . . . vice president . . . [or] secretary . . . of the entity holding such mortgage, or otherwise purporting to be an authorized signatory for such entity . . . shall be binding upon such entity.

Mass. Gen. L. c. 183, § 54B.  "The heart of the ch. 183 § 54B inquiry, therefore, is whether (1) a person purporting to be an authorized signatory of the mortgage holder, (2) executed the

---

[2] The Court finds that Kirtz has standing to challenge the validity of the assignment because the Court distinguishes between a mortgagor challenging a foreclosure sale on the basis that the foreclosing entity did not properly hold the mortgage at the time of the foreclosure because the assignment was void and a mortgagor challenging a foreclosure sale on the basis that the assignment of the mortgage failed to comply with a Pooling and Servicing Agreement (PSA) that governs a trust that holds pools of home loans.  See Butler, 2012 WL 3518560, at *7 (noting that "Massachusetts case law distinguishes between void and voidable assignments" and therefore, even if an assignment was violative of a PSA, that by itself, would not render the assignment void); see also Lacey, 480 B.R. at 33–34 (distinguishing between a challenge to a foreclosure based on an invalid assignment as a general proposition and a challenge to a foreclosure based on an assignment's violation of the PSA governing the trust); Bailey v. Wells Fargo Bank, NA (In re Bailey), 468 B.R. 464, 474 (Bankr. D. Mass. 2012) (same).

assignment before a notary public or other authorized officer." Peterson, 2011 WL 5075613, at *4. Whether the individual has "actual authority" to assign the mortgage "is not a concern addressed by the statute." Id.; see Kiah v. Aurora Loan Servs., No. 10-40161-FDS, 2011 WL 841282, at *7 (D. Mass. March 4, 2011) (holding that even if the mortgage assignment signatory lacked authority to assign the mortgage, the assignment would not be invalidated under Massachusetts law as long as Mass. Gen. L. c. 183, § 54B requirements are satisfied). "The assignor is not required to prove or validate the authority of the underlining signatories." Peterson, 2011 WL 5075613, at *4.

Here, the Assignment of Mortgage assigning Wells Fargo the mortgage in the Property was recorded with the Suffolk County Registry of Deeds. Assignment of Mortgage, D. 11-2. A signature reading "Andrew S. Harmon" that purports to be that of an Assistant Secretary and Vice President of MERS, the entity that held the mortgage to the Property, is clear on the face of the document. Id. The signature was notarized by Samantha Yang of the Commonwealth of Massachusetts. Id. Accordingly, "the clear language of § 54B provides that the assignment would be binding." Kiah, 2011 WL 841282, at *7. Therefore, there is a facially valid assignment of the mortgage from MERS to Wells Fargo prior to the foreclosure sale in November 2011.

The only basis for Kirtz's allegation that Wells Fargo did not hold assignment of the mortgage is the conclusory allegation that Harmon's signature is fraudulent. Compl. ¶ 31.[3] "In alleging fraud or mistake, a party must state with particularity the circumstances constituting

---

[3] MERS' assignments authorized by Andrew Harmon have previously been held to be valid by this court. Rosa, 821 F. Supp. 2d at 430 (noting that the "assignment was executed by Andrew Harmon, purporting to be Assistant Secretary and Vice President of MERS, the entity that held title to the Mortgage, before a notary public [and] [b]ecause the assignment complied with the requirements of the Massachusetts statute regarding mortgage assignments, it is valid").

fraud or mistake." Fed. R. Civ. P. 9(b). Kirtz does not allege with specificity the circumstances

constituting fraud as required by Rule 9(b). See Hayduk, 775 F.2d at 444 (noting that mere

allegations of fraud cannot satisfy the particularity requirement). Kirtz's allegation of fraud is

simply a legal conclusion and Kirtz does not plead any facts that would permit the court to draw

the reasonable inference that the assignment was invalid under Mass. Gen. L. c. 183, § 54B. Cf.

Islamic Ass'n of DeSoto, Tex., Inc. v. Mortg. Elec. Registration Sys., Inc., No. 3:12-CV-0613-D,

2012 WL 2196040, at * 3 (N.D. Tex. June 15, 2012) (holding that an allegation that the person

who executed the assignment for MERS "is known to be subject to forgery" was conclusory and

did "not permit the court to draw the reasonable inference that the assignment was 'defective,

fraudulent and/or forged'"); Rivera v. Recontrust Co., No. 2:11-CV-01695-KJD-PAL, 2012 WL

2190710, at *3 (D. Nev. June 14, 2012) (dismissing the plaintiff's allegations of fraud in the

mortgage assignments that were supported solely by the legal conclusions that the "'Defendants

created fraudulent documents' based on 'un-authorized signatures'" because the plaintiff failed

to state the circumstances of the fraud with sufficient particularity); Goines v. CIT Grp., Fin.,

Assignor, No. H-11-03287, 2012 WL 1551712, at *5 (S.D. Tex. May 1, 2012) (noting that the

assignments were notarized and bore no indicia of fraud and that the plaintiff did not plead facts

regarding a fraudulent signature to "raise a right to relief above a speculative level").

Accordingly, Kirtz has not adequately pled a failure to comply with the requirements of Mass.

Gen. L. c. 183, § 54B, and therefore Kirtz's allegation that Wells Fargo did not have assignment

of the mortgage fails to state a claim for relief. See Peterson, 2011 WL 5075613, at *5

(dismissing claims based upon a challenge to the validity of the mortgage assignment on the

basis that the plaintiff failed to plead facts that would tend to establish that the signature on the assignment was not genuine).

*4.      Promissory Note*

Finally, Kirtz challenges the foreclosure on the basis that Wells Fargo did not hold the original promissory note at the time of the foreclosure sale.  Compl. ¶ 155.  The Supreme Judicial Court in <u>Eaton v. Fed. Nat'l Mortg. Ass'n</u>, 462 Mass. 569 (2012), has resolved the debate of whether the foreclosing entity must hold the note in order to foreclose as a matter of law.  In <u>Eaton</u>, the Supreme Judicial Court held that the foreclosure sale must be conducted by the note holder or by one who acts as an authorized agent of the note holder.  462 Mass. at 584. However, the rule is to be applied prospectively "only to foreclosure sales for which the mandatory notice of sale has been given after the date of [the <u>Eaton</u>] opinion[,]" June 22, 2012. <u>Id.</u> at 589.  The foreclosure and accompanying notice of sale at issue in this case occurred prior to the date of the <u>Eaton</u> decision and accordingly, whether Wells Fargo held the note at the time of foreclosure does not affect the validity of the foreclosure sale.  <u>See</u> <u>Woods v. Wells Fargo Bank, N.A.</u>, No. 11-CV-30216-MAP, 2012 WL 2577580, at *2 (D. Mass. July 3, 2012) (applying <u>Eaton</u> prospectively and noting that "as a pre-<u>Eaton</u> mortgagee, [the bank] would be entitled to foreclose even without proof that it was also the note holder or its agent"). Accordingly, the allegation that Wells Fargo did not have the original promissory note at the time of the foreclosure cannot serve as a basis for the claim of wrongful foreclosure.

Because Kirtz has failed to properly allege any grounds for why the foreclosure was improper, Wells Fargo's motion to dismiss the wrongful foreclosure claim, Count XII, is granted.

22

I.     **Violation of Chapter 93A (Count X)**

In Count X, Kirtz alleges a violation of Mass. Gen. L. c. 93A.  Compl. ¶¶ 146–148.  As grounds for dismissal, Wells Fargo argues that Kirtz failed to (1) allege that she sent a demand letter to Wells Fargo as required by Chapter 93A and (2) provide factual allegations detailing the unfair and deceptive conduct.  Def. Mem., D. 11 at 20.

*1.     Demand Letter Requirement*

Before bringing suit under this statute, a plaintiff must mail to the defendant "a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered."  Mass. Gen. L. c. 93A, § 9(3).  Compliance with the statutory notice requirement must be specifically alleged in the complaint and failure to make such allegations is a ground for dismissal of the claim.  Rodi, 389 F.3d at 19 (noting that the plaintiff's complaint failed to mention the statutory notice and as such was a sufficient ground to justify dismissal of the Chapter 93A claim).

In this instance, Kirtz does not specifically allege that she sent the statutory notification within the requisite time period, but alleges instead that she "has performed all necessary conditions precedent to this action within the purview of Mass. Gen. L. ch. 93A."  Compl. ¶ 147.  Given Kirtz's allegation that she performed the "necessary conditions precedent" for a Chapter 93A claim and her assertion in her opposition to Wells Fargo's motion to dismiss that Wells Fargo received and answered a demand letter, the Court will not dismiss Count X for failure to specify satisfaction of the notification requirement of Chapter 93A.  Kirtz is granted leave to amend the complaint to specify that she complied with the statutory notice requirement.  See Rodi, 389 F. 3d at 20 (noting that "[a] failure to allege compliance with the statutory notice

requirement is not necessarily a death knell for a Chapter 93A claim.  Massachusetts courts typically have allowed plaintiffs to amend in order to cure this kind of modest pleading defect [and] [f]ederal practice is no less permissive").

2.      *Factual Allegations*

As to the factual allegations forming the basis for Kirtz's Chapter 93A claim, Kirtz alleges that "[t]he acts or practices of the defendant resulting in the loss of the Plaintiff['s] home and economic and personal loss, were done willfully and knowingly in violation of Mass. Gen. Laws ch. 93A § 2."  Compl. ¶ 148.  As a basis for dismissing this claim, Wells Fargo argues that this is insufficient to put it on notice as to what conduct Kirtz deems unfair and deceptive.  Def. Mem., D. 11 at 20.  However, the complaint must be read as a whole and the allegations that form the basis of her Chapter 93A claim can be gleaned from the body of the complaint.

Chapter 93A prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. L. c. 93A, § 2.  Even though Kirtz's Chapter 93A claim arises in the context of alleged violations of HAMP, "[n]otwithstanding the possibility of overlap between HAMP and Chapter 93A violations, it is also clear that violation of a federal regulation or statute such as HAMP is neither sufficient nor necessary to establish a Chapter 93A claim."  Maldonado v. AMS Servicing LLC, Nos. 11-40044-FDS, 11-40219-FDS, 2012 WL 220249, at *6 (D. Mass. Jan. 24, 2012).  Therefore, the "logical focus of the inquiry" is whether the conduct alleged is independently actionable under Chapter 93A.  Id.  In determining whether an act or practice is "unfair," courts look to "(1) whether the practice . . . is within the penumbra of a common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers."  Mass.

24

Eye & Ear Infirmary, 412 F.3d at 243 (alteration in original) (quoting PNP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975)) (internal quotation marks omitted).  "Which acts will be considered 'deceptive' is less clearly defined in the case law . . . [but] some cases have held that an act or practice is deceptive 'if it could reasonably be found to have caused a person to act differently from the way he or she otherwise would have acted.'"  Incase Inc. v. Timex Corp., 488 F.3d 46, 57 (1st Cir. 2007) (quoting Aspinall v. Philip Morris Cos., 442 Mass. 381, 394 (2004)).

Here, Kirtz alleges that her loan modification process was drawn out for over a year in part because Wells Fargo repeatedly switched her primary point of contact and over the course of a year, she was assigned seven separate loss mitigation specialists.  Compl. ¶¶ 47, 81.  Kirtz alleges that she properly completed the appropriate paperwork, but whenever the new specialist was assigned, that new contact person would not have access to anything Kirtz had previously submitted and would require her to restart the loss mitigation process.  Id. ¶¶ 48, 69.  Kirtz further alleges that she would often be unable to get her assigned loss mitigation specialist on the phone for weeks at a time.  Id. ¶ 50.  Kirtz's fifth primary contact person was named David whom Kirtz claims she had trouble reaching.  Id. ¶¶ 63–64.  She further alleges that she eventually found out that David closed her file because he was unable to reach Kirtz, however Kirtz alleges that at all relevant times she has maintained a cell phone and diligently checked her messages.  Id. ¶¶ 64–65.  The Court finds that such allegations here surpass "minor delay or trivial clerical flaws" such that they rise to the level of a Chapter 93A violation.  Morris v. BAC Home Loans Servicing, L.P., 775 F. Supp. 2d 255, 263 (D. Mass. 2011); compare id. (granting plaintiffs leave to amend their complaint to include further factual support for the allegation that

the bank unfairly disregarded and mishandled their HAMP application, such as facts regarding the bank's history of being nonresponsive), with Maldonado, 2012 WL 220249, at *7 (dismissing a Chapter 93A claim because the Court found that that the claim "rest[ed] largely on allegations that defendants delayed consideration of modification" and such "mere delay in business matters, without more, is not normally 'unfair' within the meaning of Chapter 93A"). Kirtz also alleges that she acted "differently from the way . . . she otherwise would have acted" in the face of the delayed modification process because she did not pursue other options that may have allowed her to keep her home or realize some equity and endured "increased interest, penalties, late fees, and loss of reputation, lack of access to funds, and . . . needless financial problems." Id. ¶¶ 96, 121.

Kirtz has also alleged that Wells Fargo scheduled a foreclosure while she was being considered for a loan modification. Id. ¶¶ 93, 107. Such conduct could also constitute an unfair or deceptive practice. See Orozco v. GMAC Mortg., LLC, No. 11-11135-FDS, 2012 WL 4581092, at *4 (D. Mass. Oct. 1, 2012) (finding that "plaintiff's allegations that defendant proceeded with foreclosure while it was it was still considering her loan modification request could constitute an unfair or deceptive practice"); Blackwood v. Wells Fargo Bank, N.A., No. 10-10483-JGD, 2011 WL 1561024, at *4 (D. Mass. Apr. 22, 2011) (same).

Accordingly, Kirtz's Chapter 93A claim will not be dismissed and Kirtz is granted leave to amend the complaint.

## V.      Conclusion

For the foregoing reasons, Wells Fargo's motion to dismiss is DENIED as to counts III (negligent misrepresentation), V (estoppel or detrimental reliance) and GRANTED as to counts I

(breach of contract), II (fraud), IV (negligence), IX (quiet title), XI (violation of the covenant of good faith and fair dealing) and XII (wrongful foreclosure).   The motion to dismiss is GRANTED without prejudice as to count X (violation of Mass. Gen. L. c. 93A) and Kirtz has two weeks from the date of this order to amend her complaint as to this count. Wells Fargo's motion to dismiss counts VI (unjust enrichment), VII (negligence per se) and VIII (intentional infliction of emotional distress) is DENIED as moot.

**So ordered.**

/s/ Denise J. Casper
United States District Judge