# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LAUREL KIRTZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 12-10690-DJC |
| ) | |
| WELLS FARGO BANK N.A., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                                  August 5, 2014

### I. Introduction

Laurel Kirtz ("Kirtz") has filed this lawsuit against Wells Fargo Bank, N.A. ("Wells Fargo") asserting claims that arise out of the denial of her loan modification application under the Home Affordable Modification Program ("HAMP") and the subsequent foreclosure on her residence in November 2011 by Wells Fargo. Wells Fargo has now moved for summary judgment. D. 33. The Court ALLOWS Wells Fargo's motion.

### II. Factual Allegations

Unless otherwise noted, the following facts are as stated in Wells Fargo's Statement of Facts ("SOF"). D. 35. Under Local Rule 56.1, the facts proffered by Wells Fargo are deemed admitted, because Kirtz has not filed a response that complies with Local Rule 56.1 to Wells Fargo's SOF. Stonkus v. City of Brockton Sch. Dep't, 322 F.3d 97, 102 (1st Cir. 2003) (quoting D. Mass. L.R. 56.1 (providing that "[m]aterial facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by

1

the opposing parties unless controverted by the statement required to be served by opposing parties")).[1]

On September 26, 2005, Kirtz purchased her home located at 92 Moreland Street in Boston, Massachusetts (the "Property") for approximately $680,000. SOF ¶ 1. In October 2006, Kirtz refinanced the Property with a mortgage for $600,000. Id. ¶ 2. Wells Fargo became the servicer of the loan in July 2007. Id. ¶ 4.

In May 2010, Kirtz defaulted on her mortgage. Id. ¶ 6. In June 2010, Wells Fargo sent Kirtz a letter introducing her to the Home Affordable Modification Program ("HAMP") and Kirtz indicated her desire to participate in the program. Id. ¶ 11. Wells Fargo requires borrowers seeking a HAMP modification to submit proof of their current income to lenders demonstrating their eligibility for the program. D. 35-2. Wells Fargo requires self-employed employees like Kirtz to submit (1) a copy of their most recent filed tax return[2] with all schedules; and (2) copy of their most recent quarterly or year-to-date profit and loss statement. Id. at 4. Wells Fargo communicated these requirements to Kirtz when she submitted her initial application. See D. 35-2; D. 35-3 (letters from Wells Fargo).

In September 2010, Kirtz submitted her initial HAMP application. D. 35 ¶ 12. In October, Wells Fargo told Kirtz that she needed to submit additional documentation for Wells Fargo to consider her HAMP application. Id. ¶ 13. After an initial review of her application, Wells Fargo told Kirtz that she lacked sufficient income to be eligible for a HAMP modification, but encouraged her to increase her income. Id. ¶¶ 14-15.

---

[1] In her opposition, Kirtz identifies certain facts that she disputes, but does not otherwise address or controvert the facts in the SOF filed by Wells Fargo. D. 36 at 2.

[2] HAMP guidelines require borrowers to submit a tax return as a form of income verification. Id. ¶ 27.

On December 16, 2010, Kirtz initiated her second HAMP modification review. Id. ¶ 18. Wells Fargo sent Kirtz a HAMP loan modification package to complete and asked that the documentation be submitted by December 31, 2010. Id. Kirtz understood that she needed to submit certain documents to be considered for a loan modification, but provided no such documentation as of December 31, 2010. Id. ¶¶ 19-20.

Wells Fargo then sent Kirtz a third HAMP application package on January 1, 2011 and asked that she submit the required documentation by January 16, 2011. Id. ¶ 21. Kirtz submitted some documents on February 4, 2011, which she believed completed her application, but in fact was deficient because she had not submitted her 2009 taxes, her most recent profit/loss statement or her profit/loss statement for 2010. Id. ¶¶ 23-24.

During this time, Wells Fargo attempted to verify Kirtz's income independently. However, after requesting a transcript of her 2009 tax returns from the Internal Revenue Service on February 7, 2011, Wells Fargo learned that Kirtz had not filed her tax returns for 2009. Id. ¶¶ 25-26. Wells Fargo made similar requests of the IRS in March, April and May 2011, but each request was denied because Kirtz had not filed a tax return. Id. ¶ 28. Consequently, on May 6, 2011, Wells Fargo denied Kirtz's HAMP modification because she had failed to provide sufficient documentation of her income. Id. ¶¶ 30-32.

That same day, Kirtz resubmitted a loan modification package (her fourth attempt) and "felt that this meant [her] file was complete," but Wells Fargo made no such representation. Id. ¶ 37. In fact, the May 6, 2011 package did not include: Kirtz's 2009 federal tax return, 2010 profit and loss statement, current paystubs, information relating to her earnings at Sherman Market, current bank account statements, a breakdown of her freelance income, quarterly bed

3

and breakfast income, savings account statements or records of all PayPal transactions for the bed and breakfast. Id. ¶ 38. On May 10, 2011, Wells Fargo again requested Kirtz's 2009 federal income tax transcript from the IRS, but learned no return had been filed. Id. ¶ 41; D. 35-7 at 5. Accordingly, on May 12, 2011, Wells Fargo sent a letter to Kirtz requesting that she submit her 2009 tax return and updated earnings information to Wells Fargo by June 11, 2011. Id. ¶ 42. Kirtz submitted a 2011 profit and loss statement from her business as well as her income from Sherman Market on June 11, 2011 and a revised profit and loss statement on June 16, 2011. Id. ¶¶ 45-46; D. 35-16; D. 35-17. Nevertheless, Kirtz never submitted her 2009 tax return despite Wells Fargo's numerous written and oral requests. Id. ¶ 47. Because Wells Fargo had not received Kirtz's 2009 tax returns, Wells Fargo denied Kirtz's HAMP modification. Id. ¶ 48.

Kirtz asserts, however, that she filed her taxes in May 2011 and that this made her HAMP application complete. D. 36 ¶¶ 1-2.[3] Moreover, Kirtz asserts that had she been aware of a deficiency in her application, she would have updated her file. Id. ¶ 3. According to Kirtz, Wells Fargo indicated the application was complete except for the 2009 tax return. D. 35 ¶ 49; D. 36 ¶ 4.

In her fifth and final attempt, Wells Fargo invited Kirtz to reapply to the program in July 2011. D. 35 ¶ 51. On or about August 28, 2011, a representative of Wells Fargo contacted Kirtz about her application for the HAMP program, because Kirtz had not submitted a completed application. D. 38-1; D. 38 at 6. During this call, Kirtz acknowledged not having completed the application. Id. Wells Fargo's representative stated during this call that because the application was pending and incomplete for longer than thirty days, Wells Fargo removed the application

---

[3] Kirtz's statement of facts is incorporated into her opposition to Wells Fargo's motion for summary judgment. D. 36 at 2-3.

from the review process, but that it could process a new application once it received Kirtz's documentation. Id. However, because Plaintiff did not submit the requisite documentation, Wells Fargo denied Kirtz's application on September 1, 2011. D. 35 ¶ 52.

During the course of Kirtz's loan modification review, Kirtz had several conversations with employees of Wells Fargo. Id. ¶ 53. In none of these conversations, however, did Wells Fargo ever represent or imply that it would not foreclose upon the Property. Id. ¶ 56. Kirtz and representatives of Wells Fargo also discussed her non-foreclosure workout options. Id. ¶ 55. Nevertheless, Kirtz asserts that she did not know all of the workout options available to her, asserting that she "would have behaved differently had she been accurately informed as to the proceedings and workout options available to her." D. 36 ¶ 6.

## III. Procedural History

On March 23, 2012, Kirtz filed the instant complaint asserting claims for breach of contract (Count I), fraud (Count II), negligent misrepresentation (Count III), negligence (Count IV), estoppel or detrimental reliance (Count V), unjust enrichment (Count VI), negligence per se (Count VII), intentional infliction of emotional distress (Count VIII), quiet title (Count IX), violation of Mass. Gen. L. c. 93A (Count X), violation of the covenant of good faith and fair dealing (Count XI) and wrongful foreclosure (Count XII) against Wells Fargo. D. 9. Kirtz also asserted the claim of quiet title against Fannie Mae. Id. Wells Fargo and Fannie Mae removed the action to this court on April 19, 2012. D. 1. On May 7, 2012, Fannie Mae moved to dismiss the single claim against it pursuant to Fed. R. Civ. P. 12(b)(6). D. 7. On May 10, 2012, Wells Fargo moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). D. 10. Kirtz withdrew her claims of unjust enrichment, negligence per se and intentional infliction of

5

emotional distress in her opposition to Wells Fargo's motion to dismiss. D. 16. At a hearing on the motions on November 7, 2012, the court granted Fannie Mae's motion to dismiss. In a November 29, 2012 memorandum and order, the Court dismissed all of Kirtz's claims against Wells Fargo except her claims for (1) negligent misrepresentation; (2) estoppel; and (3) violation of Mass. Gen. L. c. 93A, the latter of which the Court dismissed without prejudice pending her amendment of the complaint as to this claim (which Kirtz later amended, D. 27). D. 23. Wells Fargo has moved for summary judgment on each of these claims in the first amended complaint. D. 33. After oral argument on the motion, the Court took the matter under advisement. D. 42.

## IV. Discussion

### A. Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets her burden, the non-moving party may not rest on the allegations or denials in his pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial. Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable to the

6

nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

### B. There Is No Genuine Dispute of Material Fact as to Kirtz's Negligent Misrepresentation Claim

To assert a claim for negligent misrepresentation under Massachusetts law, a plaintiff must allege that the defendant:

> (1) in the course of his business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance on the information, and that he (6) failed to exercise reasonable care or competence in obtaining or communicating the information.

Braunstein v. McCabe, 571 F.3d 108, 126 (1st Cir. 2009) (quoting Gossels v. Fleet Nat'l Bank, 453 Mass. 366, 902 (2009)) (internal quotation marks omitted).

#### 1. *There Is No Genuine Dispute that Wells Fargo Did Not Supply False Information to Kirtz*

To prevail on a negligent misrepresentation claim, Kirtz must show, in the first instance, that Wells Fargo supplied false information to her. Zimmerman v. Kent, 31 Mass. App. Ct. 72, 77 (1991). Kirtz's position as to the precise nature of Wells Fargo's alleged misrepresentation has morphed over the course of this litigation. The complaint alleged that "[Wells Fargo] represented to [p]laintiff on multiple occasions that the plaintiff's loss mitigation file was complete and needed no additional documents before offering a mortgage modification." Compl. ¶ 101. Now, however, Kirtz appears to assert that Wells Fargo represented to Kirtz that her application would be complete upon submission of her 2009 tax return. D. 36 at 2 ¶ 4. Kirtz therefore asserts that because she filed her tax return in May 2011, id. ¶ 1, but that her application nonetheless denied, Wells Fargo made a false representation to Kirtz.

7

The record does not support Kirtz's assertion. As an initial matter, there is no genuine dispute of fact that Kirtz never submitted her tax return to Wells Fargo. Although Kirtz asserts that she filed her 2009 taxes in May of 2011,[4] she has not controverted Wells Fargo's assertion that Kirtz never provided her 2009 tax return to Wells Fargo.[5] D. 35 ¶¶ 47, 52 (asserting that Kirtz did not provide her tax returns before Wells Fargo denied Kirtz's fourth and fifth attempts to obtain a HAMP modification). Accordingly, even if Wells Fargo had represented to Kirtz that the submission of her tax returns would complete her HAMP application, Kirtz has proffered no evidence demonstrating the falsity of this representation. Without any factual basis to support this assertion, Kirtz cannot defeat summary judgment. See Wasylow v. Glock, Inc., 975 F. Supp. 370, 382 (D. Mass. 1996) (granting summary judgment for defendant because plaintiff "advanced no facts").

Even if Kirtz had provided Wells Fargo with her 2009 tax return, the evidence in the record demonstrates that Wells Fargo did not represent to Kirtz that her application would be complete upon the submission of her 2009 tax return. In the letter that Wells Fargo sent to Kirtz on May 12, 2011, the bank noted that it "must receive the documents listed below [including a revised 'Request for Modification Affidavit'] by June 11, 2011." D. 35-10. It is undisputed that Kirtz did not send the "Request for Modification Affidavit" to Wells Fargo until June 18, 2011.

---

[4] Kirtz uses the term "submitted" in her statement of fact, but her deposition testimony indicates that this means that she filed her tax return with the IRS in May 2011 and not that she submitted a copy of her tax return to Wells Fargo. D. 35-23 at 10.

[5] Kirtz argues that Wells Fargo "did not make an effort to check" whether she filed her tax returns after early May 2011. Even if this is so, there is no evidence in the record to suggest that the burden was on Wells Fargo to locate Kirtz's 2009 tax returns. To the contrary, the record indicates that it was Kirtz's responsibility to provide supporting documentation to Wells Fargo. See, e.g., D. 35-3 at 4 (discussing documents, including an IRS form, that Kirtz would need to send to Wells Fargo to complete her application).

D. 35-18. Accordingly, even if Kirtz had submitted her 2009 tax returns by June 11, 2011, her application would still have been deficient.

In addition, to the extent that Kirtz argues that she eventually submitted the requisite documentation as part of her fifth attempt to receive a loan modification, her own actions belie that she believed that she did not need to submit additional documentation to Wells Fargo to complete the application process. In a conversation with a representative of Wells Fargo on August 28, 2011, Kirtz acknowledged that she had not submitted the requisite documentation to complete her HAMP application. D. 38-1.

In response to each of Kirtz's attempts to complete a HAMP application, Wells Fargo advised that she would need to submit additional document to complete her application. Each time, Kirtz failed to provide what Wells Fargo asked for, they denied Kirtz's application. On this record, Wells Fargo did exactly what it said it would do. Accordingly, there is no genuine dispute as to Kirtz's failure to show that Wells Fargo provided false information to her, a requisite element of her negligent misrepresentation claim.

### 2. *There is No Genuine Dispute that Kirtz Did Not Justifiably Rely on False Information Provided by Wells Fargo*

Even if Wells Fargo had represented to Kirtz that her HAMP application would be complete upon the submission of her tax returns, Wells Fargo would still be entitled to summary judgment on Kirtz's negligent misrepresentation claim. "[J]ustifiable reliance is integral to a claim for negligent misrepresentation." Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 59 (2004). "[I]n some circumstances a plaintiff's reliance on oral statements in light of contrary written statements is unreasonable as a matter of law." Id. (quoting Sound Techniques, Inc. v. Hoffman, 50 Mass. App. Ct. 425, 433-34 (2000) (finding that "no reasonable basis [existed] for

9

ignoring the plain language of the merger clause, in which [the plaintiff] agreed that it was entering into the contract free from influence by or in reliance upon any representations other than those set out in the contract").

The record conclusively undercuts Kirtz's assertion that she relied on Wells Fargo's purported statement that the 2009 tax return was the final piece of the puzzle in her HAMP application process. First, as discussed above, there is no evidence in the record that Kirtz ever provided Wells Fargo with a copy of her tax returns and so she did not "submit[] a complete modification package in June 2011 as she asserts in her affidavit," D. 36-1 ¶ 4. Second, Wells Fargo's May 12, 2011 letter enumerated a number of documents other than the 2009 tax return that Kirtz needed to file to complete her application. D. 35-10. Third, in a conversation on August 28, 2011, Kirtz acknowledged to a Wells Fargo representative that there were forms Kirtz needed to complete to finalize her HAMP application. D. 38-1; D. 38 at 6. Accordingly, the record demonstrates that there is no genuine dispute that Kirtz did not justifiably rely on Wells Fargo's alleged promise that filing her 2009 tax return would complete Kirtz's HAMP application. In the absence of "specific facts showing there is a genuine issue for trial," Plaintiff cannot defeat summary judgment on her negligent misrepresentation claim. Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

### C. Kirtz's Estoppel Claim Fails As It Lacks Any Factual Support

To establish an estoppel claim under Massachusetts law, Kirtz must demonstrate that "(1) a party made 'a representation intended to induce reliance on the part of a person to whom the representation is made;' (2) a person acts 'in reasonable reliance on the representation;' and (3) the party suffers a 'detriment as a consequence of the act.'" Thrivent Fin. for Lutherans v. Strojny, No. 11-11011-JLT, 2012 WL 3218526, at *5 (D. Mass. Aug. 9, 2012) (quoting

Bongaards v. Millen, 440 Mass. 10, 15 (2003)). Kirtz's estoppel claim must fail because there is no genuine dispute of fact over either of the first two of these elements.

First, Kirtz has not cited a single promise made by Wells Fargo that her modification would be approved if she provided certain documents. To the extent Kirtz asserts that Wells Fargo promised that Kirtz's HAMP application would be complete upon submission of her 2009 tax returns, the Court rejects that argument for the reasons discussed above.[6] As Kirtz has "fail[ed] to offer sufficient factual support to counter [Wells Fargo's] proffer on an element for which [Kirtz] bears the burden of proof at trial . . . the movant is entitled to summary judgment." St. Hilaire v. City of Laconia, 885 F. Supp. 349, 353 (D.N.H. 1995) (citing Smith v. Stratus Computer, Inc., 40 F.3d 11, 12 (1st Cir. 1994)), aff'd, 71 F.3d 20 (1st Cir. 1995).

Second, to prevail on this claim, Kirtz must demonstrate that she reasonably and detrimentally relied on Wells Fargo's alleged promise. Even assuming "Wells Fargo represented to Kirtz that she would be considered for a loan modification if she submitted all of the appropriate paperwork," D. 36 at 6, the evidence in the record undercuts her assertion that she detrimentally relied on such a promise by submitting the requisite paperwork because she failed to do so. As discussed above, as late as August 28, 2011, Plaintiff acknowledged that she still needed to complete certain documentation. D. 38-1. On this record, the Court must grant summary judgment in Wells Fargo's favor on Kirtz's estoppel claim. B. C. Recreational Indus. v. First Nat. Bank of Boston, No. 75-5053-MA, 1980 WL 1865, at *8 (D. Mass. Apr. 30, 1980)

---

[6] In the Court's Order regarding the motion to dismiss in this case, the Court understood Kirtz's claim to be that Wells Fargo "promised her that it would modify her loan, provided that she "submit[ ] documents and work diligently to increase her income" and that "her home was not being referred for foreclosure." Kirtz v. Wells Fargo Bank N.A., No. 12-10690-DJC, 2012 WL 5989705, at *7 (D. Mass. Nov. 29, 2012); D. 23. Kirtz does not appear to press these allegations in her opposition to Wells Fargo's motion for summary judgment. Even if Kirtz were pressing these arguments, they too lack support in the record.

(granting summary judgment where plaintiffs' allegations were deemed "conclusory and unsupported by any facts which effectively contradict the record submitted by the defendants") aff'd, 639 F.2d 828 (1st Cir. 1981).

### D. Wells Fargo Is Also Entitled to Summary Judgment on Kirtz's Chapter 93A Claim

Kirtz's final claim arises under Mass. Gen. L. c. 93A. Chapter 93A prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. L. c. 93A, § 2. "A HAMP violation itself does not provide a private cause of action to the borrower, although it may provide the basis of a violation of Chapter 93A. . . . Notwithstanding the possibility of overlap between HAMP and Chapter 93A violations, it is also clear that violation of a federal regulation or statute such as HAMP is neither sufficient nor necessary to establish a Chapter 93A claim." Maldonado v. AMS Servicing LLC, Nos. 11-40044-FDS, 11-40219-FDS, 2012 WL 220249, at *6 (D. Mass. Jan. 24, 2012). Therefore, putting aside whether there was a HAMP violation to begin with here or whether recovery under Chapter 93A is consistent with the objectives and enforcement mechanisms of HAMP (which courts in this district have, see id. (citations omitted)), the "logical focus of the inquiry" is whether the conduct alleged is independently actionable under Chapter 93A. Id.

In determining whether an act or practice is "unfair," courts look to "(1) whether the practice . . . is within the penumbra of a common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 243 (1st Cir. 2005) (alteration in original) (quoting PNP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975)) (internal quotation marks omitted). "Which

acts will be considered 'deceptive' is less clearly defined in the case law . . . [but] some cases have held that an act or practice is deceptive 'if it could reasonably be found to have caused a person to act differently from the way he or she otherwise would have acted.'" Incase Inc. v. Timex Corp., 488 F.3d 46, 57 (1st Cir. 2007) (quoting Aspinall v. Philip Morris Cos., 442 Mass. 381, 394 (2004)).

Kirtz's theory as to the 93A claim appeared to be that: (1) Wells Fargo unfairly mishandled Kirtz's HAMP application by drawing out the application process and closing her application without giving Kirtz an opportunity to supplement her application; and (2) Wells Fargo scheduled a foreclosure while Kirtz was being considered for a loan modification. Kirtz, 2012 WL 5989705, at *12-13. The undisputed facts fail to support either theory.[7]

The record has borne out that there is no genuine dispute of fact that each time Kirtz initiated her HAMP applications, she failed to provide the requisite documentation to Wells Fargo or failed to qualify. Kirtz's first application failed because her reported income was insufficient to establish eligibility for the program. D. 35 ¶ 15. Her second application failed because Kirtz failed to submit the requisite documentation. Id. ¶ 20. Her third attempt failed for the same reason. Id. ¶¶ 38, 47-48. Her final attempt failed because Kirtz failed to complete the

---

[7] Now, in this context, Kirtz asserts a claim outside the scope of her c. 93A demand letter, that Wells Fargo made a false representation regarding Kirtz's tax returns that was unfair or deceptive. D. 36 at 7. At oral argument, counsel for Kirtz conceded that this claim was a departure from the demand letter. Given that the purpose of a c. 93A demand letter is to put a prospective defendant on notice of the claim, injury suffered and relief that the claimant seeks, "[i]t is therefore essential that the complainant define the injury suffered and the relief demanded in a manner that provides the prospective defendant with an opportunity to review the facts." Casavant v. Norwegian Cruise Line Ltd., 460 Mass. 500, 506 (2011) (citation and internal quotation marks omitted). Even if properly before the Court, however, there is nothing about Wells Fargo's conduct regarding Kirtz's tax returns, which involved numerous requests to Kirtz for them and attempts by Wells Fargo to obtain them from the IRS despite the fact that they were not filed until May 2011, that rises to the level of unfair and deceptive conduct by Wells Fargo.

application itself. Id. ¶ 52. Accordingly, there is no genuine dispute of fact that Kirtz's failure to complete the application process was a result of her own conduct, not Wells Fargo's actions. Such conduct, on this record, is not actionable under c. 93A. Swanson v. Bankers Life Co., 389 Mass. 345, 349-50 (1983). In Swanson, an insurance company delayed paying the plaintiffs' meritorious claim for insurance coverage because the plaintiffs had not demonstrated their eligibility for coverage. Id. at 345. The plaintiffs there claimed that the defendant "had an obligation to investigate the claim with greater diligence than it did." Id. at 348-49. In dismissing Plaintiffs' claim, the court noted that "a plaintiff's conduct, his knowledge, and what he reasonably should have known may be factors in determining whether an act or practice is unfair." Id. at 349. The court in that case, therefore, concluded that there was nothing unfair about placing the burden on the Plaintiffs to "bring the appropriate information to the attention of the insurer." Id. at 350. So too here, Wells Fargo has placed the burden on Kirtz to present the necessary information to Wells Fargo for her HAMP application. There is no genuine dispute that Kirtz failed to do so.

The record has also borne out that there is also no dispute that Wells Fargo did not schedule Kirtz's foreclosure while her HAMP application was pending. The undisputed facts demonstrate that her last pending application was denied on September 1, 2011. D. 35 ¶ 52. The Property was not foreclosed until November 2011. Id. ¶ 59. Even assuming a foreclosure during the pendency of a HAMP application might be a basis for a c. 93A claim, there is no dispute that Wells Fargo refrained from engaging in such conduct here. Kirtz has presented no facts casting doubt on this conclusion. See Rivera-Cotto v. Rivera, 38 F.3d 611, 615 (1st Cir. 1994) (finding

that plaintiff presented failed to present sufficient facts and therefore did not sustain burden to defeat summary judgment).

## V. Conclusion

For the foregoing reasons, Wells Fargo's motion for summary judgment, D. 33, is ALLOWED.

**So ordered.**

          /s/ Denise J. Casper
          United States District Judge